Borenstein, J.
This matter comes before this Court on plaintiffs motion for summary judgment pursuant to Mass.R.Civ.P. 56(a) on Count I of the plaintiffs complaint. In the complaint, the plaintiff alleges the following claims, which arise from an agreement entered into for the purchase and sale of certain land in Kittery, Maine: Count I, breach of contract; Count n, fraud; Count III, negligent misrepresentation; Count IV, tortious interference with advantageous relations; and Count V, violations of G.L.c. 93A.[4] For the reasons set forth below, plaintiffs motion for summary judgment on Count I of the complaint is ALLOWED.
BACKGROUND
Based on the summary judgment record before this Court, the undisputed material facts are as follows: The plaintiff, Kevin O. Adams 1982 Trust (“KOAT”), and the defendants, Yankee Settlements (“Yankee”) and John P. Wells (“Wells”), signed an initial purchase and sale agreement for certain real estate located at Rogers Road in Kittery, Maine on April 23, 1999. After re-negotiation, the final purchase and sale agreement (the “agreement”) was signed on April 26, 1999.
Prior to signing the agreement, the defendants learned that the plaintiff had sent an adjoining property owner a proposed easement agreement and had been pressuring the adjoining property owner to grant an easement over the adjoining properly. With this knowledge, the defendants had the land specified in the agreement evaluated in many ways, including, but not limited to the following: they hired Oak Point Associates, who produced engineering plans; they hired Natural Resource Consulting Services, who mapped the wetlands; they hired Easterly Surveying, who surveyed the property and wetlands; they arranged for economic studies to be done; and they brought builders, realtors, other interested parties and their wives to view the land.
On or about April 21, 1999, the defendants learned that the plaintiff had filed a sketch plan, for the property in question, with the office of the town planner for the town of Kittery. The defendants confronted the plaintiff with this information and were assured that the sketch plan would be withdrawn.
Pursuant to the agreement of April 26, 1999, the defendants agreed to pay the plaintiff $950,000 in four (4) installments for certain real estate located in Kitt-ery, Maine. The first three (3) installments were to be nonrefundable deposits of $50,000, $55,000 and $100,000 due to the plaintiff on April 27, 1999, April 30, 1999 and May 07, 1999 respectively. The fourth installment was for $745,000, which represented the balance due on the purchase and sale agreement, and was to be paid prior to May 24, 1999, the scheduled date for the closing of the agreement.
By April 28, 1999, the defendants had tendered to the plaintiff two checks totaling $50,000 as payment of the first nonrefundable deposit. On April 29, 1999, the defendants claim, they learned that the sketch plan filed by the plaintiff was still on file with the town planner. Moreover, the defendants allege without any supporting evidence, that the land which was the subject of the agreement between these parties was also under agreement with a third party, and that the plaintiff had been showing the land while negotiating with the defendants’ attorneys and while the defendants were performing tests and surveys on the land, all before the signing of the purchase and sale agreement on April 26, 1999. On April 29, 1999, the defendant issued a stop payment order on both checks.
H. DISCUSSION
A. Summary Judgment Standard
A motion for summary judgment is in order, and shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.R 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s case, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991), but may satisfy its burden by “demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmoving party must articulate specific facts, establishing the exis *122 tence of a genuine issue of material fact. Pederson, 404 Mass. at 17. If there are any disputed material facts, summary judgment is improper. Id.
B. Count I: Breach of Contract Claim
The plaintiff seeks summary judgment on Count I of the complaint, breach of contract. In order to prove breach of contract, the plaintiff must prove the following: (1) there was a valid and enforceable contract; and (2) defendants failed to fulfill an obligation under the agreement. The plaintiff contends that the material facts pertaining to the existence of their legally enforceable contract with the defendants and the defendants’ breach of that contract are undisputed. Specifically, the plaintiff contends that the contract speaks for itself, that the plaintiff fully complied with its obligations under the contract while the defendants failed to comply with the payment terms of the contract, and that the defendants’ failure to comply with the contract constitutes a breach of the purchase and sale agreement.
(1) An Enforceable Contract Existed
The signed purchase and sale agreement between the plaintiff and the defendants is a fully integrated contract. The final paragraph provides that “This Agreement sets forth the entire agreement between the parties and there are no other representations, agreements or understandings with respect to the subject matter of this agreement.” Exhibit 1. It is undisputed that the initial purchase and sale agreement was signed and executed on April 23, 1999, then a final signed purchase and sale agreement was executed on April 26, 1999. The evidence is clear and undisputed that the defendants were fully aware of the communications regarding the easement at the time of the signing of the contract. This Court finds that plaintiff had been in discussions with him regarding an easement since November 1998. The defendants were also aware, at the time of the signing of the contract, of the sketch plan which was filed by plaintiffs with the town of Kittery. This Court finds as a matter of law that the plaintiff and the defendants willingly and knowingly entered a valid, enforceable agreement.
(2) Defendants Breached the Contract
Pursuant to the agreement, if the initial deposit of $50,000 “is not paid by Buyer [defendants] in accordance with this paragraph 2(a) then Seller [plaintiff] may, at Seller’s option, immediately terminate this Agreement and pursue all remedies under paragraph 10 of this Agreement.” Exhibit 1, par. 2(a). As a matter of law based on the undisputed material facts in this case, this Court finds that the defendants breached the agreement by failing to pay the initial deposit in accordance with terms of the agreement.
The defendants claim that they were excused from breaching the agreement because the plaintiff anti-cipatorily repudiated the agreement, thereby permitting the defendants to stop payment on the checks and to terminate the agreement. “An anticipatory repudiation of a contract is ‘a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.’ ” Wholesale Sand & Gravel, Inc. v. Decker, 630 A.2d 710, 711 (Me. 1993), quoting 4 Corbin, Corbin on Contracts §973 (1951); see also Restatement (Second) of Contracts §250 (1979). Defendants contend that they learned of specific conduct of the plaintiff which led them to believe the plaintiff had anticipatorily repudiated the contract. In support of their contention the defendants assert: (1) an agent of KOAT sent a proposed easement agreement to an abutter’s attorney . . . after the parties hereto had agreed to buy and sell; (2) KOAT continued to show the premises to prospective buyers while the defendants performed due diligence; (3) materials for a sketch plan review filed on behalf of the plaintiff which was to be withdrawn, was still on file in the Town Planner’s office; (4) the defendants received information from a reliable source that the land under agreement was also under agreement with a third party; and (5) the plaintiff failed to provide the defendants with any assurance of performance as requested.
The fundamental contention of the defendants is that they were entitled to not perform their obligation under the purchase and sale agreement because of definite and unequivocal actions or manifestations of the plaintiff that it would not be performing under the contract. While words or conduct may manifest an intention to repudiate a contract, such words or conduct “must be definite, unequivocal, and absolute.” Wholesale Sand & Gravel, Inc. v. Decker, 630 A.2d at 711 (anticipatory repudiation found where after its second weekend of work at a construction site, plaintiff construction company removed its equipment and did not return). This Court finds that the plaintiffs actions did not constitute such definite, unequivocal or absolute conduct as to equate anticipatory repudiation.
Furthermore, the parol evidence rule and the integration clause in the purchase and sale agreement operate to exclude the very kind of allegations that the defendant seeks to use to prove anticipatory repudiation by the plaintiff. If the defendants felt the easement discussions or filing of the sketch plan contravened their efforts to reach an agreement, they were free not to sign the contract, or to include these as performance conditions within the contract. But, having full knowledge of the easement discussions before signing the contract, and the filing of the sketch plan, they may not now claim after signing the contract that those issues constituted evidence of anticipatory repudiation.
Finally, one of the defendants’ allegations in support of their refusal to perform their part of the purchase and sale agreement is that the plaintiff had the *123 land under agreement with a third party at the time plaintiff contracted to sell the land to the defendants. The defendants make this assertion based only on information from a “reliable source.” Pursuant to Mass.R.Civ.P. 56(e), “Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.” If the party opposing summary judgment merely rests upon the allegations or denials of its pleading without supplying the court with affidavits setting forth the specific facts which show there is a genuine issue for trial, “summary judgment, if appropriate, shall be entered against him.” Mass.R.Civ.P. 56(e). As of today’s date, the defendants have not submitted any additional proof, aside from mere allegations, relating to this claim.
As a matter of law the plaintiff did not anticipatorily breach the agreement and the defendants did breach the agreement. Accordingly, the plaintiffs motion for summary judgment as to Count I of the plaintiffs complaint is ALLOWED as to liability only.
III. ORDER
Based upon the foregoing, it is hereby ORDERED that Plaintiffs’ motion for partial summary judgment is ALLOWED as to Count I, alleging breach of contract, as to liability only.

Plaintiff has also filed a motion to dismiss Counts II and V of the defendants’ counterclaim, but this motion is not before this Court at this time.